**SO ORDERED.**

**SIGNED this 23 day of July, 2010.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

IN RE:

| | |
|---|---|
| COASTAL PLAINS PORK, LLC, | CHAPTER 11 |
| | CASE NO. 09-08367-8-RDD |
| DEBTOR. | |
| | |
| FIRST NATIONAL BANK OF OMAHA, | ADVERSARY PROCEEDING |
| a National Banking Association, | NO. 09-00214-8-RDD |
| | |
| Plaintiff, | |
| | |
| vs. | |
| | |
| FARMERS COOPERATIVE SOCIETY, | |
| SIOUX CENTER, IOWA, and | |
| COOPERATIVE ELEVATOR | |
| ASSOCIATION, | |
| | |
| Defendants. | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pending before the Court is the Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law filed by Amos U. Priester IV, counsel for First National Bank of Omaha ("FNBO")[1] on February 3, 2010 (the "FNBO's Motion"), and the Defendants' Motion for Partial

---

[1] On July 1, 2010, an order was entered granting First National Bank of Omaha's Motion to Substitute Attorney. Michael P. Flanagan of the firm of Ward and Smith, P.A. was substituted

Summary Judgment and Incorporated Memorandum of Law filed by Jennifer K. Bennington on behalf of Cooperative Elevator Association ("CEA") and Farmers Cooperative Society, Sioux Center, Iowa ("FCS") on February 26, 2010 (the "Defendants' Motion").  The Court conducted an initial hearing in Wilson, North Carolina on March 2, 2010 to consider the FNBO's Motion and the Defendants' Motion.  A second hearing on the motions was held on June 30, 2010 in Wilson, North Carolina.

## BACKGROUND

On September 28, 2009, Coastal Plains Pork, LLC ("Coastal Plains") filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code.  Prior to the filing of bankruptcy, Coastal Plains operated a farrow-to-finish farm for the production of swine in several states, including Iowa. In connection with its hog growing operation, Coastal Plains obtained a loan from FNBO and purchased feed from FCS and CEA.  Feed purchased and received by Coastal Plains from FCS and CEA was consumed by the Coastal Plains' swine and hogs, in order for the animals to reach the appropriate market weight for sale.  After the filing of the petition, and in compliance with other orders of this Court, the hogs that consumed feed from FCS and CEA were to be sold, and any liens, claims or other interests in the hogs would attach to the proceeds of the sale.  In addition, the proceeds were to be marshaled, accounted for, and reported to this Court.

FNBO[2] entered into two credit agreements and notes with Coastal Plains dated October 8, 2008; whereby FNBO loaned Coastal Plains funds for operations which were secured by security

---

for Amos U. Priester IV as counsel for First National Bank of Omaha.

[2]The parties do not dispute that FNBO is a financial institution as contemplated by *Iowa Code* Chapter 570A.

interests and liens in substantially all of Coastal Plains' assets, including livestock and any sale proceeds (the "FNBO Prepetition Loans").[3] Funds from the FNBO prepetition loans were used to finance the hog growing operation in Iowa. In connection with the loan given to Coastal Plains, FNBO held a lien and security interest in the Coastal Plains hogs which consumed feed supplied by FCS and CEA.

FNBO's lien on the livestock and the proceeds from the sale of said livestock was properly perfected by the filing of a UCC-1 financing statement with the North Carolina Secretary of State on October 7, 2008, file number 200800903856. In order to maintain its secured status, FNBO continued to file all necessary financing statements in the proper offices and took all other necessary steps to maintain its perfected lien and security interest in its collateral. The parties do not dispute that FNBO properly filed the UCC-1 and has a properly perfected financial institution lien.

FCS and CEA are both suppliers of feed to livestock as contemplated by *Iowa Code* Chapter 570A. FCS and CEA admit that FNBO has a perfected security interest in the proceeds from the sale of the disputed livestock at issue in this case. However, FCS and CEA both claim they are entitled to first priority agricultural supply dealer liens, in front of FNBO, as suppliers of feed to livestock under *Iowa Code* Chapter 570A. FCS claims it has a perfected agricultural supply dealer lien as a supplier of feed to livestock. On September 11, 2009, FCS perfected an agricultural supply dealer's lien with respect to the pigs owned by Coastal Plains. CEA claims it has a perfected agricultural supply dealer's lien as a supplier of feed to livestock. The lien applies to hogs owned by Coastal Plains, and said lien was perfected by a financing statement

---

[3]Kalkowski Aff., docket entry 41, paragraphs 3 - 5.

filed June 30, 2009 in the office of the Secretary of State for North Carolina. FCS and CEA admit that neither requested the certification from FNBO as set forth in *Iowa Code* § 570A.2.

## SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate.

## ISSUES BEFORE THE COURT

FNBO filed this adversary proceeding so that the Court could determine the relative priorities between FNBO's perfected security interest in Coastal Plains' personal property, including Coastal Plains' livestock, and the agricultural supply dealer liens claimed by FCS and CEA under *Iowa Code* § 570A. The Court is asked to decide the priority of the liens claimed against proceeds from the post-petition sale of Coastal Plains' livestock. FNBO asserts its Article 9 security interest is superior, whereas, FCS and CEA claim that as agricultural supply dealers their liens take first priority. FNBO relies on *Iowa Code* § 570A.2, to establish its senior Article 9 security interest. On the other hand, FCS and CEA contend that *Iowa Code* § 570A.5(3) is controlling, and that because FCS and CEA supplied livestock feed, *Iowa Code* § 570A.2(3) has no application.

The parties agree that there is no genuine issue of material fact. However, the legal issue before the Court is the interpretation of *Iowa Code* § 570A, and the Court's determination whether FCS and CEA have perfected liens under this statute which would give them priority over the properly perfected lien of FNBO. The parties agree that FCS and CEA did not prepare or send the certified request[4] or any certified mailings to FNBO as required by *Iowa Code* § 570A.2. The parties further agree that FCS and CEA did not send a statement of "the amount of the purchase and terms of the sale" to FNBO. *See Iowa Code* § 570A.2(1). Further, the parties agree that FCS and CEA did not send a waiver of confidentiality signed by the farmer or the $15.00 fee, as required by the Iowa Code, to FNBO.

FNBO argues that the statute provides it, as a financial institution, with an affirmative defense against the enforcement of an agricultural lien by a supply dealer who did not first serve it with a certified request or farmer's confidentiality waiver, as FCS and CEA failed to do. *See Iowa Code* § 570A.2(3).[5] FNBO asserts that having not received the certified request and waiver signed by the farmer as provided in *Iowa Code* § 570A.2, FNBO's lien is senior to and has priority to the statutory liens of FCS and CEA, regardless of the provisions of *Iowa Code* § 570A.5(3). Therefore,

---

[4]Defined in *Iowa Code* § 570A.1(6) as "a request delivered by certified mail or registered certified mail, in person if in writing and signed and dated by the respective parties, or in the manner provided by the Iowa rules of civil procedure for the personal service of original notice."

[5]*Iowa Code* § 570A.2(3) "Upon an action to enforce a lien secured under section 570A.3 against the interest of a financial institution secured to the same collateral as that of the lien, it shall be an affirmative defense to a financial institution and complete proof of the superior priority of the financial institution's lien that the financial institution either did not receive a certified request and a waiver signed by the farmer, or received the request and a waiver signed by the farmer and provided the full and complete relevant financial history which it held on the farmer making the purchase from the agricultural supply dealer on which the lien is based and that financial history reasonably indicated that the farmer did not have a sufficient net worth or line of credit to assure payment of the purchase price."

FNBO argues it has an affirmative defense to FCS' and CEA's enforcement of their liens under *Iowa Code* § 570A.5.(3). According to FNBO, this defense serves as "complete proof of the superior priority" of FNBO's security interest. *Iowa Code* § 570A.2(3).

In response to FNBO's argument, FCS and CEA admit that they did not provide FNBO with the certified requests and confidentiality waivers. FCS and CEA contend that *Iowa Code* § 570A.5, read in its entirety, must be interpreted as giving a special priority to agricultural supply dealer liens for livestock feed. Further, FCS and CEA assert that *Iowa Code* § 570A.5(3) provides that livestock feed suppliers "shall have priority over an earlier perfected lien or security interest to the extent of the difference between the acquisition price of the livestock and the fair market value of the livestock at the time the lien attaches or the sale price of the livestock, whichever is greater." Finally they claim that this priority treatment is not susceptible to the affirmative defense provided to financial institutions in *Iowa Code* § 570A.2(3) and asserted by FNBO.

## ANALYSIS

Chapter 570A of the Iowa Code establishes agricultural supply dealer liens and provides for priority of such liens whether perfected or unperfected. *Crooked Creek Corp. v. Primebank*, 427 B.R. 500, 505 (Bankr. N.D. IA. 2010). At the core of the dispute between the parties is whether in order to establish a more favorable priority over FNBO's prior perfected security interest, FCS and CEA were required to provide FNBO with a certified request for a financial memorandum regarding Coastal Plains, as well as, provide FNBO with a confidentiality waiver from the farmer as set forth in *Iowa Code* § 570A.2(1). *See Galva Holstein v. Holstein Dairy*, No. EQCV014128 (Iowa Dist., June 21, 2010).

*Iowa Code* § 570A.2 states:

570A.2 Financial institution memorandum to agricultural supply dealers.

1. Upon the receipt of a certified request of an agricultural supply dealer, prior to or upon a sale on a credit basis of an agricultural supply to a farmer, a financial institution which has either a security interest in collateral owned by the farmer or an outstanding loan to the farmer for an agricultural purpose shall issue within four business days a memorandum which states whether or not the farmer has a sufficient net worth or line of credit to assure payment of the purchase price on the terms of the sale. The certified request submitted by the agricultural supply dealer shall state the amount of the purchase and the terms of sale and shall be accompanied by a waiver of confidentiality signed by the farmer, and a fifteen dollar fee. The waiver of confidentiality and the certified request may be combined and submitted as one document. If the financial institution states in its memorandum that the farmer has a sufficient net worth or line of credit to assure payment of the purchase price, the memorandum is an irrevocable and unconditional letter of credit to the benefit of the agricultural supply dealer for a period of thirty days following the date on which the final payment is due for the amount of the purchase price which remains unpaid. If the financial institution does not state in its memorandum that the farmer has a sufficient net worth or line of credit to assure payment of the purchase price, the financial institution shall transmit the relevant financial history which it holds on the person. This financial history shall remain confidential between the financial institution, the agricultural supply dealer, and the farmer.

2. If within four business days of receipt of a certified request a financial institution fails to issue a memorandum upon the request of an agricultural supply dealer and the request from the agricultural supply dealer was proper under subsection 1, or if the memorandum from the financial institution is incomplete, or if the memorandum from the financial institution states that the farmer does not have a sufficient net worth or line of credit to assure payment of the purchase price, the agricultural supply dealer may decide to make the sale and secure the lien provided in section 570A.3.

3. Upon an action to enforce a *lien* secured under section 570A.3 against *the interest of a financial institution secured to the same collateral as that of the lien*, it shall be an affirmative defense to a financial institution and *complete proof of the superior priority of the financial institution's lien* that the financial institution either did not receive a certified request and a waiver signed by the farmer, or received the request and a waiver signed by the farmer and provided the full and complete relevant financial history which it held on the farmer making the purchase from the agricultural supply dealer

> on which the lien is based and that financial history reasonably indicated that the farmer did not have a sufficient net worth or line of credit to assure payment of the purchase price. (*emphasis added*).

FNBO argues that the language of *Iowa Code* § 570A.2(3) gives FNBO an affirmative defense to the claims of FCS and CEA. According to the statute, an agricultural supply dealer who is considering selling a farm supply to a farmer on credit, may, prior to or upon the sale of the supplies, make a certified request to a financial institution, including a bank such as FNBO, which has a security interest in collateral owned by the farmer. *Crooked Creek Corp.*, 427 B.R. at 506. Once the financial institution receives the certified request, the financial institution "shall" issue, within four business days, a "memorandum which states whether or not the farmer has a sufficient net worth or line of credit to assure payment of the purchase price on the terms of the sale." *Id.* (*citing Iowa Code* § 570A.2(1)). In order for FCS and CEA to have gained favorable priority over the FNBO lien, it appears to the Court that FCS and CEA were first required to provide certified requests and also to request the memorandum referred to in *Iowa Code* § 570A.2(1) set forth above. The failure to make such a request serves as a complete bar to any claims made by FCS or CEA against collateral already encumbered by FNBO. Although, FCS and CEA still have a perfected agricultural feed supplier lien, their failure to follow the procedures set forth in *Iowa Code* § 570A.2(1) prevents them from obtaining a superior lien position over the properly perfected security interest of FNBO.

As such, absent an exception, or exclusion that would negate the provisions and protections afforded a financial institution under § 570A.2(3), it would appear that FNBO has a complete bar to the claims of FCS and CEA. *Galva Holstein v. Holstein Dairy*, No. EQCV014128 (Iowa Dist., June 21, 2010) .

However, FCS and CEA argue that their liens are superior and rely on a different section of the Iowa Code. There is no dispute that both FCS and CEA are agricultural supply dealers as defined by *Iowa Code* § 570A.1(5).[6] The Iowa Code sets out the lien rights available to agricultural supply dealers in *Iowa Code* § 570A.3. FCS and CEA, as agricultural supply dealers, are seeking to enforce their lien rights created by *Iowa Code* § 570A.3. Despite FCS' and CEA's failure to provide FNBO with a certified request and waiver of confidentiality, as set forth in *Iowa Code* § 570A.2(1), they assert that the language of *Iowa Code* § 570A.5(3), in fact, negates FNBO's superiority as a first priority creditor.

*Iowa Code* Chapter 570A provides:

570A.5 Priority of lien.

Except as provided in this section, an agricultural supply dealer lien that is effective or perfected as provided in section 570A.4 shall be subject to the rules of priority as provided in section 554.9322. For an agricultural supply dealer lien that is perfected under section 570A.4, all of the following shall apply:

1. The lien shall have priority over a lien or security interest that applies subsequent to the time that the agricultural supply dealer lien is perfected.

2. Except as provided in section 570A.2, subsection 3, the lien shall have equal priority to a lien or security interest which is perfected prior to the time that the agricultural supply dealer lien is perfected. However, a landlord's lien that is perfected pursuant to section 570.1 shall have priority over a conflicting agricultural supply dealer lien as provided in section 570.1, and a harvester's lien that is perfected pursuant to section 571.3 shall have priority over a conflicting agricultural supply dealer lien as provided in section 571.3A.

3. A lien in livestock feed shall have priority over an *earlier perfected lien*

---

[6] Agricultural supply dealers are defined as, "a person engaged in the retail sale of agricultural chemicals, seed, feed, or petroleum products used for an agricultural purpose." *Iowa Code* § 570A.1(5).

9

>    *or security interest* to the extent of the difference between the acquisition
>    price of the livestock and the fair market value of the livestock at the time the
>    lien attaches or the sale price of the livestock, whichever is greater.

*Iowa Code* § 570A.5 (*emphasis added*).

There is no dispute that the FCS and CEA are trying to enforce their lien rights against the interest of a financial institution, FNBO, which is secured by the same collateral as that of FNBO's lien. However, FCS and CEA contend that *Iowa Code* § 570A.5(3) should be interpreted in a way that would allow agricultural supply liens to obtain a more favorable priority over a previously perfected security interest in the same collateral as that of a financial institution regardless of their failure to comply with *Iowa Code* § 570A.2. FCS and CEA argue that *Iowa Code* § 570A.5(3) should be read independently of *Iowa Code* § 570A.2.

The Iowa Supreme Court has set forth the rules of statutory construction as outlined by the United States District Court for the Northern District of Iowa in *Farmers Coop. v. Swift Pork Co. and L.O.L. Finance Company*, 602 F.Supp.2d 1095, 1107-08 (Dist. N.D. IA. 2009) wherein it stated:

>    ...As the Iowa Supreme Court has recently explained, when confronted with the task of determining the meaning of a statute, we have stated:
>    
>    The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of the statute. *Auen v. Alcoholic Beverage Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (citations omitted). The interpretation of a statute requires an assessment of the statute in its entirety, not just isolated words or phrases. *State v. Young*, 686 N.W.2d 182, 184-85 (Iowa 2004). Indeed, 'we avoid interpreting a statute in such a way that portions of it become redundant or irrelevant.' *T& K Roofing Co. v. Iowa Dep't. of Educ.*, 593 N.W.2d 159, 162 (Iowa 1999)(citation omitted). We look for a reasonable interpretation that best achieves the statute's purpose and avoids absurd results. [*Schandendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337-38 (Iowa 2008)*;*]

>   *Harden v. State*, 434 N.W.2d 881, 884 (Iowa 1989). Thus, the court's role is, first, to determine whether the meaning of the statute is plain, and if so, to give effect to that plain meaning. [ ]*State v. Public Employment Relations Bd.*, 744 N.W.2d 357, 360-61 (Iowa 2008) [ ]When we interpret a statute, our primary goal is to ascertain the legislature's intent. *State Pub. Defender v. Iowa Dist. Co.*, 663 N.W.2d 413, 415 (Iowa 2003). To determine the legislature's [ ]intent, we first examine the language of the statute. *Id*. 'If the statutory language is plain and the meaning clear, we do not search for legislative intent beyond the express terms of the statute.'*Horsman v. Wahl*, 551 N.W.2d 619, 620-21 (Iowa 1996)[ ]'If the statute's language is clear and unambiguous, we apply a plain and rational meaning consistent with the subject matter of the statute.' [*Birchansky Real Estate, L.C. v. Iowa Dep't. of Public Health*, 737 N.W.2d 134, 139 (Iowa 2007)](quoting *ABC Disposal Sys., Inc. v. Dep't. of Natural Res*., 681 N.W.2d 596, 603 (Iowa 2004). See *Farmers Cooperative*[, 602 F.Supp.2d 1095, 1107-08.][ ]

*Galva Holstein v. Holstein Dairy*, No. EQCV014128, p. 11 (Iowa Dist., June 21, 2010).

In light of the above principles, the Court believes that *Iowa Code* §570A.5(3) cannot stand or be read alone. *Galva Holstein v. Holstein Dairy*, No. EQCV014128, p. 11 (Iowa Dist., June 21, 2010). The rules of statutory construction require the Court to read the statute as a whole and give effect to the plain meaning of the statute, where the meaning of the statute is plain. *Id*. Taken as a whole, this statute is a well organized scheme for the creation, perfection, priority and enforcement of liens to secure the sale of agricultural supplies in Iowa. *Crooked Creek*, 427 B.R. at 505.

This Court in reviewing *Iowa Code* § 570A.5 in its entirety, and in conjunction with the other provisions of Chapter 570A of the Iowa Code, concludes that the protection given a financial institution in *Iowa Code* § 570A.2(3) applies to all actions to enforce agricultural supply dealer liens against the interest of a financial institution secured by the same collateral, regardless of the type of agricultural supply the agricultural supply dealer has provided the farmer. *Galva Holstein v. Holstein Dairy*, No. EQCV014128 (Iowa Dist., June 21, 2010) . Therefore, the affirmative defense afforded to a financial institution set forth in *Iowa Code* §

570A.2(3) applies to the lien which may be claimed under *Iowa Code* § 570A.5(3). *Galva Holstein v. Holstein Dairy*, No. EQCV014128 (Iowa Dist., June 21, 2010).

In looking at the statute as a whole, *Iowa Code* § 570A.5(3) deals with the determination of the priorities between agricultural supply dealer liens, and not as against the priority of the financial institution. The caption of *Iowa Code* § 570A.5 is entitled "Priority of Lien." Had the legislature intended *Iowa Code* § 570A.5(3) to grant a priority lien over the lien of a financial institution, it would have explicitly said so by referring to the perfected lien or security interest as the financial institution lien, similar to the language in *Iowa Code* § 570A.2. In addition, the legislature would have stated in *Iowa Code* § 570A.2, that § 570A.5(3) was an exception to the affirmative defense set forth in § 570A.2(3). Such explicit exception language does not exist.

Therefore, the general reference in *Iowa Code* § 570A.5(3) to the perfected lien or security interest is to the agricultural supply dealer lien and not to the lien of the financial institution. Section 570A.5(3) of the *Iowa Code* simply determines priority among competing agricultural supply dealers liens, not between the lien of the financial institution and agricultural supply dealer lien. Further, the caption of *Iowa Code* § 570A.2 is entitled "Financial Institution Memorandum to Agricultural Supply Dealers." Such caption and placement of the caption in *Iowa Code* § 570A.2 effectively serves as a warning and reminder to agricultural supply dealers of the necessary requirements they must satisfy to avoid an affirmative defense of the financial institution. This interpretation is bolstered by the language of *Iowa Code* § 570A.2(3) which makes reference to "the complete proof of the superior priority of the financial institution's lien." Such language shows the intent of the Iowa legislature that the lien of the financial institution be superior unless the agricultural supply dealer follows the requirements of Iowa Code § 570A.2.

Furthermore, this Court's interpretation of the statute is supported by dicta in *Wilkin Elevator v. Bennet State Bank*, 522 N.W.2d 57 (Iowa 1994), a decision of the Iowa Supreme Court. In *Wilkin Elevator,* Wilkin Elevator brought several claims against the bank after having had not been paid for supplying hog feed to a married farm couple who were bank borrowers. *Crooked Creek Corp.,* 427 B.R. at 510 (summarizing the facts of *Wilkin Elevator*, 522 N.W.2d 57). As in the present case, both the bank and the agricultural supplier believed they had a priority claim to the proceeds of the sale of the farmer's hogs. *Id*. The Iowa Supreme Court noted: "[a]ny lien under that statute was ineffective as against the bank, however, because of the feed store's failure to provide the bank with the required documentation. *Iowa Code* § 570A.2(3) (1991)." *Wilkin Elevator,* 522 N.W.2d at 62 n.3. Even though dicta in a footnote, this reference is the only reference found to the interpretation of this statute by the Iowa Supreme Court.

With FCS and CEA having both admitted they did not provide FNBO with a certified request or confidentiality waiver and FNBO having testified that none were ever received,[7] it is clear that FCS and CEA failed to comply with the requirements of the Iowa Code. As a result of their failure to provide a certified request and confidentiality waiver, FNBO has a complete affirmative defense to the agricultural supply dealer liens and has conclusively established the superior priority[8] of its lien over any liens claimed by FCS and CEA as a matter of law.

The Iowa legislature has set forth a process by which agricultural feed suppliers can obtain priority over a financial institution with a prior perfected lien under Chapter 570A. Such a

---

[7]See Answer to Complaint filed by FCS and CEA, paragraph 13; Kalkowski Aff., docket entry 41, paragraph 7.

[8]FCS and CEA do not dispute FNBO properly filed its UCC-1 and has a lien superior to their lien unless they are entitled to the agricultural supply dealer lien pursuant to *Iowa Code* § 570A.5(3).

13

legislative policy provides protection to the agricultural supply dealer which is trying to determine whether to extend credit to the farmer. Said policy also provides notice to the financial institution of the farmer's need for credit from a supplier. Compliance with *Iowa Code* § 570A.2 not only furthers the legislative goal of protecting the credit interests of the agricultural supply dealer, but also protects the financial institution's interest in the farmer and its collateral and the interest of the farmer in obtaining feed through credit. The Iowa legislature has attempted to balance all of these interests and by following the specific requirements of the statute, FCS and CEA could have protected their interests, while also giving FNBO notice of Coastal Plain's need for not only feed, but also credit to purchase the feed.

Questions were raised at the hearings as to whether agricultural supply dealers in fact comply with Chapter 570A of the Iowa Code in the course of conducting business. However, regardless of current business practices, the law is clear. In order for an agricultural feed supplier to obtain a superior position to a financial institution with a prior perfected lien, the feed supplier must follow the specific procedures set forth in *Iowa Code* § 570A.2(3). An agricultural supply dealer must make a certified request to the financial institution "stating the amount of the purchase and the terms of the sale and shall be accompanied by a waiver of confidentiality signed by the farmer, and a fifteen dollar fee." *Iowa Code* § 570A.2(1). Failure to follow this procedure will result in the failure of the agricultural supply dealer to obtain a priority position over the financial institution and would provide an affirmative defense to any agricultural supply dealer lien if raised by the financial institution.

Therefore, after a thorough review of the facts in this proceeding and a careful reading of Chapter 570A of the Iowa Code, the Court concludes that in order for the agricultural supply dealer

liens of FCS and CEA to trump the superior lien position of FNBO's perfected security interest, FCS and CEA must first have submitted a certified request for a financial memorandum accompanied by a confidentiality waiver and the fifteen dollar fee. FCS and CEA both admit that they did not make such a request. As such, FNBO has a senior, perfected lien and is superior to any agricultural supplier lien obtained by FCS or CEA.

## CONCLUSION

Therefore, the Motion for Summary Judgment filed by First National Bank of Omaha is **GRANTED** and the Motion for Partial Summary Judgment filed by Farmers Cooperative Society, Sioux Center, Iowa, and Cooperative Elevator Association is **DENIED.** The counterclaims of FCS and CEA are **DISMISSED.** It is hereby ordered, adjudged, and decreed that the perfected security interest of FNBO in the collateral of Coastal Plains and any proceeds of the sale of such collateral has priority and is superior to the agricultural supply dealers liens of FCS and CEA.

Upon entry of this order, the Clerk is hereby directed to enter judgment in favor of FNBO as set forth above.

**SO ORDERED.**

**END OF ORDER**