```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF NORTH CAROLINA
                     SOUTHERN DIVISION

                     NO. 7:10-CV-202-H
```

| | |
|---|---|
| FARMERS COOPERATIVE SOCIETY ) <br> OF SIOUX CENTER, IOWA and ) <br> COOPERATIVE ELEVATOR ) <br> ASSOCIATION, ) <br>   ) <br>    Appellants, ) <br>   ) <br>   ) <br>   ) **ORDER** <br> v. ) <br>   ) <br>   ) <br>   ) <br> FIRST NATIONAL BANK OF OMAHA, ) <br>   ) <br>    Appellee. ) | |

```
      ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
         FOR THE EASTERN DISTRICT OF NORTH CAROLINA
                       WILSON DIVISION
```

This matter is before the court on appeal from an order of the United States Bankruptcy Court for the Eastern District of North Carolina. The judgment rendered July 23, 2010, by Judge Randy Doub is in the adversary proceeding brought by First National Bank of Omaha ("First National Bank") against Farmers Cooperative Society ("Farmers Cooperative") and Cooperative Elevator Association ("Cooperative Elevator"). All facts

necessary to resolve the issue of law on appeal are undisputed. The parties have thoroughly briefed the issues on appeal, and the matter is now ripe for adjudication.

Appellants Farmers Cooperative and Cooperative Elevator are northwest Iowa feed suppliers, and supplied feed to the debtor, Coastal Plains Pork, LLC ("Coastal Plains Pork"). Coastal Plains Pork is a North Carolina limited liability company, although a majority of its finishing sites were located in northwest Iowa. Together, Farmers Cooperative and Cooperative Elevator provided feed to the debtor's pigs at more than 80 finishing sites in northwest Iowa, resulting in a combined feed bill of $1,912,524.50.

Both appellants had filed financing statements with the Iowa and North Carolina Secretaries of State in order to perfect agricultural supply dealers' liens arising under Iowa law. The entirety of the unpaid feed bill arose during the period of time that appellants had perfected agricultural supply dealers' liens.

First National Bank had earlier filed a security interest which covered the hogs owned by the debtor. There is no dispute that the security interest of First National Bank was perfected prior to the date that appellants perfected their agricultural supply dealers' liens.

During the course of the bankruptcy proceedings, all of the debtor's hogs were liquidated. The proceeds of the hogs are insufficient to satisfy the liens of First National Bank, Farmers Cooperative and Cooperative Elevator.

On motion for summary judgment, the sole issue decided by the bankruptcy court was the relative priority of the appellants' and appellee's security interests. First National Bank has a perfected Article 9 security interest, and it is undisputed that its security interest was perfected prior in time to the perfection of the agricultural supply dealers' liens of Farmers Cooperative and Cooperative Elevator, which are agricultural liens created by Iowa Code Chapter 570A ("Chapter 570A"). The lien priority claims of Farmers Cooperative and Cooperative Elevator depend on the interpretation of Chapter 570A, particularly the interplay between §§ 570A.2 and 570A.5. The bankruptcy court ruled that the lien priority rule in 570A.5(3) was subject to the certified request requirements found in 570A.2(1) and the affirmative defense in 570A.2(3) and therefore determined that First National Bank's lien takes priority over the agricultural supply dealers' liens of Farmers Cooperative and Cooperative Elevator.

## COURT'S DISCUSSION

### I. Standard of Review

The court will not set aside any findings of fact by the bankruptcy court unless they are clearly erroneous. See Fed. R. Bankr. P. 8013. However, a bankruptcy court's conclusions of law are reviewed de novo. Terry v. Meredith (In re Meredith), 527 F.3d 372, 375 (4th Cir. 2008).

### II. Analysis

Iowa Code Chapter 570A establishes agricultural supply dealers' liens and provides for priority of such liens. Iowa Code § 570A.3 (2009). As a statutory agricultural lien, the provisions of that Chapter set forth the manner of lien perfection and establish lien priority compared to other agricultural liens or Article 9 security interests. Iowa Code § 570A.4 & 570A.5 (2009).

The core dispute in this matter is the interplay of § 570A.2 and § 570A.5, specifically whether in order to establish a more favorable priority over First National Bank's prior perfected security interest, Farmers Cooperative and Cooperative Elevator were required to provide First National Bank with a certified request for a financial memorandum regarding Coastal Plains, as well as provide First National Bank

4

with a confidentiality waiver from the farmer as set forth in Iowa Code § 570A.2(1).

Iowa Code § 570A.2 provides a procedure whereby an agricultural supply dealer can send specified documents (the "Notice") to a financial institution that holds a prior-perfected security interest in livestock owned by a farmer to which such agricultural supply dealer intends to sell supplies. If the financial institution states that the farmer is credit-worthy, the agricultural supply dealer can obtain a statutory letter of credit from such financial institution in the amount of the sales price of the supplies sold. Furthermore, § 570A.2(3) provides an affirmative defense to a financial institution holding a prior-perfected security interest in a farmer's livestock over an agricultural supply dealer lien when either (a) the agricultural supply dealer never provides the required Notice to the financial institution or (b) the agricultural supply dealer provides the Notice, but the financial institution timely responds that the subject farmer is not creditworthy. Iowa Code § 570A.2.

The priority rules at issue are set forth, in pertinent part in § 570A.5:

> For an agricultural supply dealer lien that is perfected under section 570A.4, all of the following shall apply:

1. The lien shall have priority over a lien or security interest that applies subsequent to the time that the agricultural supply dealer lien is perfected.

2. Except as provided in section 570A.2, subsection 3, the lien shall have equal priority to a lien or security interest which is perfected prior to the time that the agricultural supply dealer lien is perfected. However, a landlord's lien that is perfected pursuant to section 570.1 shall have priority over a conflicting agricultural supply dealer lien as provided in section 570.1, and a harvester's lien that is perfected pursuant to section 571.3 shall have priority over a conflicting agricultural supply dealer lien as provided in section 571.3A.

3. A lien in livestock feed shall have priority over an earlier perfected lien or security interest to the extent of the difference between the acquisition price of the livestock and the fair market value of the livestock at the time the lien attaches or the sale price of the livestock, whichever is greater.

Iowa Code § 570A.5 (2009).

The statute provides livestock feed liens with a higher priority than other agricultural supplies such as chemicals, seed or petroleum products. The legislature created a priority rule for agricultural supplies in § 570A.5(2) which is specifically subjected to the affirmative defense provided in § 570A.2(3). However, in § 570A.5(3), the legislature created a special priority for livestock feed and did not subject it to the affirmative defense found in § 570A.2(3).

The Bankruptcy Court, however, construed § 570A.2(3) as applicable to the special priority rule for livestock feed liens contained in § 570A.5(3). Appellant argues this is error, because while § 570A.5(2) expressly acknowledges that its priority rule is subject to the affirmative defense created by § 570A.2(3), no similar language is found in § 570A.5(3).

Appellee cites three guiding principles of statutory construction for the court to use in interpreting the interplay of the statutory sections discussed above. First, a statute must be read and interpreted as a whole in a manner that avoids an interpretation under which certain parts of the statute become redundant or irrelevant and in a manner that avoids absurd results. See Farmers Coop. v. SwiftPork Co, 602 F. Supp. 2d 1095, 1107-08 & n.6 (N.D. Ia. 2009). Next, if a statute is clear and unambiguous, a court should not look beyond the four corners of the statutory language and should interpret the statute in a manner that is consistent with its plain and ordinary meaning. See id. at 1107-08 n.6. Finally, when a "general and specific statute cover the same matter, the specific statute governs over any conflict with the general statute. Larsen v. Reinbeck, 776 N.W.2d 301, 303 (quoting McElroy v. State, 647 N.W.2d 488, 494 (Iowa 2004)).

In applying these rules of statutory construction, this court agrees with the appellant that if the Iowa legislature had wanted to subject the priority rule stated in § 570A.5(3) to the affirmative defense created by § 570A.2(3), it is clear they knew how to do that. Where the legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion.'" Russello v. United States, 464 U.S. 16, 23 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972)). "The presumption is much stronger, when, as here, the comparison is between two subsections of the same section of a statute." Chestnut v. Montgomery, 307 F.3d 698, 701-02 (8th Cir. 2002)). The omission of the affirmative defense language from § 570A.5(3) must be presumed to be intentional, and leads to the conclusion that § 570A.5(3) was not intended to be subject to the affirmative defense in § 570A.2(3). Had the legislature intended for the affirmative defense in § 570A.2(3) to apply to the priority rule for livestock feed liens, they could have simply added the first clause in § 570A.5(2) to the beginning of § 570A.5(3). However, the legislature did not write the statute that way, and the

8

court will not assume the absence of this language to be a mistake in draftsmanship.

Two cases from the state court of Iowa support this interpretation of the statute. While not binding, this court finds them helpful in interpreting the statutes at issue. In <u>Doon Elevator v. American State Bank</u>, No. LACV022572 (Iowa Dist. Ct. March 29, 2010), Judge Ackerman decided the same issue as is before this court in the instant matter, and concluded that § 570A.5(3) applied to give the feed supplier priority over the prior secured creditor and that the affirmative defense found in § 570A.2(3) did not apply to the feed supplier's lien claim. Judge Ackerman notes the distinction between § 570A.5(2) and § 570A.5(3), with the former subsection explicitly providing that its priority rule is subject to the affirmative defense created in § 570A.2(3) while the latter subsection excludes any language making the affirmative defense created in § 570A.2(3) applicable to a lien for livestock feed. Judge Ackerman states:

> One can justify the preferential treatment given to feed sellers because there is a logical and readily discernible basis to measure the increase in the value of the livestock resulting from the feed (i.e, market value or sales price of the livestock over the acquisition price of the livestock.) There is no similar way to measure the benefit resulting from the sale of chemicals, seed or petroleum.

<u>Doon Elevator</u>, slip op. at 16.

In the recent decision of First State Bank v. Kerber Milling Co., No. CVCV027234 (Iowa Dist. Ct. Aug. 2, 2010), the court also determined that "[t]he provisions of section 570A.2(3) do not apply to the lien priority provision in section 570A.5(3)." Kerber Milling, slip op. at 11. Judge Courtney followed the same reasoning as Doon Elevator, noting that "[i]f section 570A.2(3) applied to both subsections it should have been referenced in both subsections." Id. at 12.

First National Bank argues that this court should rely, as the bankruptcy court did, on Galva Holstein v. Holstein Dairy, No. EQCV014128 (Iowa Dist. Ct. June 21, 2010). First National Bank contends that § 570A.5(3) cannot stand or be read alone and that reviewing chapter 570A in its entirety, this court should conclude that the protection given a financial institution in § 570A.2(3) applies to all actions to enforce agricultural supply dealer liens against the interest of a financial institution secured by the same collateral, regardless of the type of agricultural supply the dealer has provided to the farmer. However, this court finds this argument to be untenable. This court would have to ignore the distinction between §570A.5(2) and § 570A.5(3). As discussed supra, this court cannot do so.

10

## CONCLUSION

Therefore, the court holds that the affirmative defense found in § 570A.2(5) does not apply to the feed lien priority rule in § 570A.5(3) and holds that Farmers Cooperative Society and Cooperative Elevator Association are entitled to priority under § 570A.5(3) to the extent of the difference between the acquisition price of the livestock and the fair market value of the livestock at the time they were sold. The judgment of the Bankruptcy Court is hereby VACATED, and this matter is remanded to the Bankruptcy court for entry of judgment consistent with this order.

The clerk is directed to close this case.

This 15th day of September 2011.

/s/ Malcolm J. Howard
Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26

11